**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **ERROL M. WINDHOM,** | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | **5:15-cv-00380-MTT-CHW** |
| | : | |
| **PHIL HALL, WARDEN,** | : | **Proceedings Under 28 U.S.C. § 2254** |
| | : | **Before the U.S. Magistrate Judge** |
| Respondent. | : | |
| | : | |

## RECOMMENDATION

On October 1, 2015, Petitioner, Errol M. Windhom, filed a federal habeas action pursuant to 28 U.S.C. § 2254 alleging multiple ineffective assistance of counsel claims and contesting the sufficiency of the evidence at trial. Respondent filed an answer-response arguing that each claim raised in the current action was decided on the merits at the state court level and Petitioner's Motion should be denied because the state courts' conclusion was not contrary to clearly established federal law or based on an unreasonable determination of the facts. Because Petitioner's claims are either procedural barred from review or were decided on the merits in a manner consistent with AEDPA's deferential standard at the state court level, it is **RECOMMENDED** that his Motion be **DENIED**. Doc. 1. It is further **RECOMMENDED** that Petitioner's "Request for Judicial notice" be **DENIED**. Doc. 14.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 5th, 2009, the Grand Jury of Peach County returned a true bill of indictment charging Petitioner, Shane Michael Bedford, and Christopher Allen Graddick with Armed

1

Robbery.[1] Doc. 17-12, p. 27-28. Petitioner proceeded to a jury trial and was found guilty. He appealed, and on May 11, 2012, his judgment of conviction was reversed by the Georgia Court of Appeals. *Windhom v. State*, 315 Ga. App. 855 (2012) ("*Windhom I*"). The case was remanded for a new trial in light of the trial court's failure to grant a mistrial or issue curative instructions after a state witness testified about inadmissible hearsay statements pertaining to an ultimate issue. *Id.* at 858 – 59.

On September 17, 2012, a jury was empaneled for a second time as to Peach County Criminal Indictment No. 09-cr-123, charging Petitioner with armed robbery. Doc. 17-10, p. 4. Petitioner's second trial began the next day and he was again found guilty. Doc. 17-12, p. 6. Petitioner was sentenced to a term of twenty years in prison. Doc. 17-12, p. 11.  Defense Counsel filed a timely motion for new trial which was denied from the bench on May 29, 2013. Doc. 17-8, p. 14. Petitioner then filed a direct appeal alleging that: (1) the trial court erred by allowing co-defendant Christopher Graddick to testify despite being incompetent; (2) the trial court erred by allowing exhibits to go out with the jury; (3) the trial court erroneously refused to give Petitioner's requested jury charge on motive and mistake of fact; (4) Petitioner's sentence was cruel and unusual punishment; and (5) the evidence was insufficient to authorize conviction. Doc. 17-7, p. 55. On March 13, 2014, the Georgia Court of Appeals affirmed Petitioner's conviction and denied all claims for relief. *Windhom v. State*, 326 Ga. App. 212 (2014).

On April 28, 2014, Petitioner filed a state habeas petition alleging ineffective assistance of appellate counsel for failure to raise various issues concerning improper comments to the jury, counsel's investigation into the co-defendants, the testimony of Christopher Graddick, failure to file a file a motion to suppress, and the sufficiency of the evidence . Doc. 17-5, p. 4 – 5. The state

---

[1] Bedford was also charged with Possession of a Firearm During the Commission of a Felony and Possession of a Firearm by a Convicted Felon.

habeas court denied all claims for relief on April 8, 2015. Doc. 17-5, p. 14. The Supreme Court of Georgia denied Petitioner's application for certificate of probable cause to appeal on September 8, 2015. The current action was filed less than a month later, on October 1, 2015. Doc. 1.

## NEED FOR AN EVIDENTIARY HEARING

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244, factual determinations made by a state court are presumed to be correct but can be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). On the other hand, if an applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that: (A) the claim relies on: (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for a constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2).  After a careful review of the record, and in light of the statement of facts presented herein, no evidentiary hearing is warranted in this case.

## LEGAL STANDARDS

In accordance with the provisions of AEDPA, federal courts are prohibited from granting habeas relief with respect to any claim adjudicated on the merits in state court unless that decision either: (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state

court proceedings. 28 U.S.C. § 2254(d); *Wellons v. Warden, Ga. Diagnostic and Classification Prison*, 695 F.3d 1202, 1206 (11th Cir. 2012). Not only is this standard "difficult to meet," *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011), but it also is a "highly deferential standard for evaluating state-court rulings . . . which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

A state court's decision is "contrary to" clearly established federal law if either "(1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). An "unreasonable application" of clearly established federal law may occur if the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case." *Id.* "An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Id.*

When a "state court's application of federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Similarly, when reviewing a state court's decision applying federal law, a federal court must not determine the accuracy of the result, but instead, whether the result was objectively unreasonable, which is "a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). A state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In *Hittson v. GDCP Warden*, 759 F.3d 1210 (11th Cir. 2014) the Eleventh Circuit explained that a Georgia Supreme Court's summary denial of a certificate of probable cause to

appeal from an adverse habeas petition constitutes an adjudication on the merits. Under AEDPA, this court reviews "the highest state court decision reaching the merits of a habeas petitioner's claim." *Id*. (citing *Newland v. Hall*, 527 F.3d 1162, 1199 (11th Cir. 2008)). Therefore, Petitioner's claims discussed below that were exhausted through his state habeas action and certificate of probable cause to appeal must be considered in terms of the Georgia Supreme Court's summary denial. "Our task in [this] situation is to review the record before the Georgia Supreme Court" and determine what arguments or theories supported that decision. *Id.* (citing *Harrington v. Richter*, 562 U.S. 86, 101 -102 (2011)). Petitioner may only obtain relief according to *Hittson* "by showing there was no reasonable basis for the state court to deny relief." *Id*. The most obvious possible reasonable basis may be the conclusion and reasoning given by the state habeas court's decision. Therefore, where appropriate, this Court will address the state habeas court's conclusion, using it as a candle in the dark to find a "reasonable basis." If that conclusion did not run afoul of clearly established federal law, it follows that the Georgia Supreme Court's adjudication on the merits had a reasonable basis.

FACTS

Under AEDPA, the Court must accord a presumption of correctness to the state court's factual findings." *Mason v. Allen*, 605 F.3d 1114, 1118 (11th Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)). The Georgia Court of Appeals outlined the evidence presented at trial as follows:

> [T]he evidence, including the testimony of co-defendant Chris Graddick, shows that an armed robbery occurred at the A & Z Flower and Game Shop on May 19, 2009. Errol Windhom played the game machines at A & Z almost every day. On the day of the robbery, after he was finished playing, he approached the counter and began a conversation with Melissa Ann Amin, an employee of A & Z. While they were talking, Windhom's phone rang, and he told Amin it was his little girl. Five to ten minutes later, Michael Shane Bedford and Chris Graddick entered the store; they had been in the store the day before and Amin recognized them. Bedford pulled a gun on Amin and threatened to kill her. He told Amin to empty

her pockets and the cash register. He took the store's cordless phones, Amin's cell phone, and $700 to $900. The two men told Windhom to lie on the ground and locked Amin in the bathroom. Amin never saw either of the two men pull a gun on Windhom or take anything from him. When she left the bathroom ten minutes later, she saw that Windhom was gone and his red Volvo was no longer parked in his parking spot.

Graddick testified that Windhom drove him and Bedford to the store in his red Volvo. Windhom gave Bedford his gun. Windhom dropped off Graddick and Bedford at the other side of the shopping center and then drove the car to A & Z, where he went inside. Graddick and Bedford waited several minutes for a telephone call from Windhom and then entered the store and committed the robbery. Graddick and Bedford exited the store, followed by Windhom, who drove them away. Bedford sat in the back seat and counted the money.

The security camera of a neighboring business made a video recording of the parking lot of A & Z, showing the three men arriving and leaving, and Graddick described the events as the video was played for the jury. On May 4, 2012, Graddick pled guilty to robbery by intimidation.

*Windhom II*, 326 Ga. App. at 213 – 14.

<u>DISCUSSION</u>

Petitioner asserts the following claims (1) ineffective assistance of trial and appellate counsel for failing to file a pretrial motion to suppress, (2) ineffective assistance of trial and appellate counsel for failing to raise the issue of the trial judge's improper comments to the jurors, (3) ineffective assistance of trial and appellate counsel for failure to investigate and subpoena Shane Bedford, (4) ineffective assistance of trial and appellate counsel for failure to contest the trial court's finding that Christopher Graddick's testimony was admissible, (5) sufficiency of the evidence, (6) trial counsel remained counsel on appeal and failed to raise a claim of actual innocence, (7) the Prosecution withheld evidence in violation of *Brady v. Maryland*, 313 U.S. 83 (1963), Doc. 12, p. 10, and (8) defense counsel misspoke during the trial.

### A.  Procedurally Defaulted Claims

Pursuant to 28 U.S.C. 2254, a writ of habeas corpus shall not be granted for an individual in custody pursuant to a state court judgment unless "the applicant has exhausted the remedies available in the courts of the state." A state court remedy is only exhausted if the claim has been fairly presented to the state courts. *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Therefore,"[a] state habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

Procedural default can arise in two situations. "First, where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred," a federal court is required to respect that decision. *Bailey*, 172 F.3d at 1302. "Second, if the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal." *Id*.

At issue in the present case is the second situation. A careful review of Petitioner's pleadings on direct appeal and in his state habeas action reveals that several claims before this court have not previously been raised.  These claims include (1) that counsel damaged the credibility of defense witness Gabriel Jackson, (2) that trial counsel failed to raise a claim of actual innocence, and (3) that the Prosecution withheld evidence in violation of *Brady*.  Doc. 9-1, p. 1. According to Georgia law, "All grounds for relief claimed by a petitioner for a writ of

habeas corpus shall be raised by a petitioner in his original or amended petitioner. Any grounds not so raised are waived," unless specific conditions are met. O.C.G.A. 9-14-51. Because Petitioner has previously filed a state habeas application, these claims are deemed waived under Georgia law and cannot now be raised. Thus, they are procedurally defaulted and must be dismissed.

### B. Claims Considered on the Merits

Petitioner's five remaining claims were raised either on direct appeal or in Petitioner's state habeas application. A review of Petitioner's brief on appeal reveals that the following claims raised in this action are exhausted (1) the trial court erred in allowing Graddick to testify, and (2) the evidence was insufficient to authorize the jury to convict.[2] Doc. 17-7, p. 53 – 98 A review of Petitioner's original brief and amendments in his state habeas action reveals that the following grounds were raised (1) ineffective assistance of counsel for failure to raise strongest issues on appeal, (2) ineffective assistance of counsel for failure to file a motion to suppress, (3) ineffective assistance of counsel for failing to raise an issue concerning improper remarks by the trial judge, and (4) ineffective assistance of counsel for failure to contest the admissibility of Graddick's testimony. Following an adverse decision from the habeas court, Petitioner filed a certificate of probable cause to appeal with the Supreme Court of Georgia.

### i. *Christopher Graddick's Testimony*

Petitioner asserts two claims concerning the testimony of Christopher Graddick. Specifically, he alleges (1) that there was insufficient evidence to support his conviction because the primary evidence at trial was the testimony of Graddick, an uncorroborated co-defendant, and (2) that the trial court erred by allowing Graddick, who had been found mentally

---

[2] On direct appeal, Petitioner also raised grounds concerning jury charges, video evidence, and that his sentence constituted cruel and unusual punishment. Doc. 17-7, p. 55. Petitioner does not raise these claims in the current action.

incompetent, to testify. Petitioner's sufficiency of the evidence argument was considered on its merits during Petitioner's direct appeal. The Georgia Court of Appeals correctly identified clearly established federal law and applied it to a reasonable determination of the facts.

As the Georgia Court of Appeals observed, according to clearly established federal law the relevant question when a defendant challenges the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence of guilt introduced at trial against Petitioner primarily included the testimony of Christopher Graddick. Graddick testified that Petitioner drove with Graddick and Shane Bedford to the flower shop on the day of the robbery. Petitioner dropped Bedford and Graddick off down the road and then entered the flower shop Doc. 17-10, p. 79. Melissa Ann Amin, an employee at the flower shop, testified that Petitioner played game machines, as he often did, and then began a conversation with her. At some point, Petitioner received a phone call, and a short time later Bedford and Graddick entered the store and robbed Amin at gun point. Petitioner was forced to lie on the ground by Graddick and Bedford, but nothing was taken from him, the gun was not pointed at him, and he was gone when Amin eventually emerged from the bathroom where Bedford and Graddick put her. A video was played for the jury, which showed three men arriving and leaving the flower shop, and Graddick testified as to the events as the video was playing—including Petitioner's involvement. Doc. 17-10, p. 91. A state witness, Ms. Jones, testified that she saw a red Volvo, similar in appearance to Petitioner's car, stop in the road outside the flower shop after the robbery and a young "white, mixed, Mexican" got in the back seat. Doc. 17-10, p. 131.

Petitioner argues that the uncorroborated testimony of a single witness, especially a co-defendant who had allegedly been determined incompetent to stand trial, was insufficient to authorize a jury to find him guilty. Petitioner testified at trial and told his version of events, and the jury is presumed to have resolved any conflicts in favor of the prosecution. This Court must defer to the jury's judgment as to the weight and credibility of the evidence. *Wilcox v. Ford*, 813 F.2d 1140, 1143 (1987) (citing *Jackson*, 443 U.S. at 326). The mere fact that the evidence gives some support to the defendant's theory does not warrant habeas relief. *Id.* (citing *Martin*, 730 F.2d 721, 724 (11th Cir. 1984)).

At the time of Petitioner's conviction, Georgia's armed robbery statute defined the essential elements to include " . . . when with intent to commit a theft, he takes property of another from the person or the immediate presence of another by use of an offensive weapon." *Kelly v. State*, 234 Ga. 893, 894 (1998) (internal citations omitted); see also O.C.G.A. 16-8-41 and *Wilcox*, 813 F.2d 1143 (whether a case satisfies the Jackson standards depends on the essential elements of the crime as defined by state law). Graddick testified that that Petitioner was involved in the theft of property from another through the use of an offense weapon. Thus, the Georgia Court of Appeals conclusion was not contrary to clearly established federal law or based on an unreasonable determination of the facts.

Petitioner also asserts that his conviction was in violation of O.C.G.A. 24-4-8, which states that:

> The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including prosecutions for treason, prosecutions for perjury, and felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless, corroborating

circumstances may dispense with the necessity for the testimony of a second witness, except in prosecutions for treason.[3]

"It is not the province of this Court to reexamine state-court determinations of state-law questions." *Jenkins v. Byrd*, 103 F. Supp.2d 1350, 1367 (S.D. Ga. (2000) (citing *Estelle*, 502 U.S. at 67-78 (1991). The Georgia Court of Appeals has determined that the evidence was sufficient to convict Petitioner under Georgia Law, and the court must defer to the state's interpretation of state law. The evidence meets the federal standard; consequently, this claim is without merit. See *U.S. v. Hoskins*, 628 F.2d 295, 296 (5th Cir. 1980) ("A federal conviction [] can be based on the uncorroborated testimony of a single witness.") (internal citations omitted).

Petitioner also asserts that the trial court committed error by allowing Graddick to testify. Specifically, Petitioner alleges that because Graddick had previously been found mentally incompetent by a psychologist, the trial court should have granted his Motion in Limine to exclude Graddick's testimony on that basis. The Georgia Court of Appeals addressed this issue on the merits and noted that the basis of Petitioner's contention that Graddick was incompetent was a psychological report completed two years earlier. Months prior to Petitioner's trial, however, Graddick was found to be competent and allowed to enter a plea of guilty.

On his direct appeal, Petitioner argued that Graddick's testimony was erroneously admitted only on state law grounds. The Georgia Court of Appeals affirmed his conviction, finding that this argument was meritless according to state law. It is not within the province of this Court to reexamine the state court's determination of state law questions. Petitioner has not pleaded any specific constitutional violation concerning this issue, and his appellate brief

---

[3] "This Georgia rule is not controlling upon collateral review by a federal court." *Llewellyn v. Stynchcombe*, 609 F.2d 194, 196 (5th Cir. 1980). Under Georgia law, however, "slight evidence, either direct or circumstantial, will suffice to corroborate an accomplice's testimony. *Drake v. Kemp*, 762 F.2d 1449, 1478 n.11 (11th Cir. 1985)

references only Georgia cases and Georgia code sections. Petitioner is not entitled to habeas relief on this state law claim.

Even if Petitioner's claim is liberally construed to implicate federal due process concerns, federal courts have held "that a lunatic may be allowed to testify if he is able to [comprehend] the obligation of an oath and give a correct account of matters he has seen or heard." *Sinclair v. Wainwright*, 814 F.2d 1516 (11th Cir. 1987) (citing *Shuler v. Wainwright*, 491 F.2d 1213 (5th Cir. 1974)). An opposing party, however, may challenge the competency of a witness, and a "failure to conduct an appropriate competency hearing implicates due process concerns of fundamental fairness." *Id*. (citing *Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir. 1976).

In this case, Petitioner's single piece of evidence as to Graddick's competence was a psychological evaluation conducted years previously[4]. Doc. 17-10, p. 7-8.  Since that time, Graddick testified at Petitioner's first trial without an objection based on competency and was found to be competent to enter a guilty plea by the judge presiding at Petitioner's trial. As part of that guilty plea, the judge found Graddick capable of knowingly, intelligently, and voluntarily waiving his Constitutional rights. *Id*. at 10. Petitioner's argument of incompetency, contemporaneous with the motion in limine, was that Mr. Graddick refused to answer questions when interviewed by the defense. During the pre-trial motion in limine, however, the court reviewed the history of Mr. Graddick's mental capacity and determined that he was competent to testify. Petitioner's counsel was able to cross-examine Graddick concerning his mental stability and the psychological evaluation was entered into evidence. Graddick testified that his mind was clear, and he gave detailed and coherent testimony concerning the events at issue in Petitioner's

---

[4] A review of Graddick's psychological evaluation reveals that his barriers to competency at the time of the evaluation were cognitive rather than psychological. Doc. 17-13, p. 5. He suffered from PTSD, Depression, and Mild Mental Retardation, and the psychologist recommended that he receive competency restoration services. Id. The record does not reveal whether he received such services,

trial. Doc. 17-10, p. 108 – 110. These proceedings satisfied due process, and Petitioner has failed to show that Mr. Graddick was incompetent to testify as a matter of federal law.

>    ii.    *Ineffective Assistance of Counsel Claims*

Petitioner's remaining claims assert that he received ineffective assistance of counsel both at trial and on appeal. To prevail on a claim of ineffective assistance of counsel, the Petitioner bears the burden of establishing by a preponderance of the evidence that: (1) his attorney's performance was deficient, and (2) he was prejudiced by the inadequate performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir.2000). The standard in Strickland applies to allegations of ineffective assistance of appellate counsel as well as trial counsel. See *Eagle v. Linahan*, 279 F.3d 926, 938 (11th Cir. 2001).   A petitioner must prove both prongs of the Strickland test to show her counsel was ineffective. *Id*.

To establish deficient performance, a petitioner must prove that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Chateloin v. Singletary*, 89 F.3d 749, 752 (11th Cir. 1996). A strong presumption exists that counsel's performance was reasonable and the challenged action constituted sound trial strategy. *Id*. In order to establish that counsel's performance was unreasonable, a petitioner must show that no objectively competent counsel would take the action in question. *Van Poyck v. Florida Department of Corrections*, 290 F.3d 1318, 1322 (11th Cir. 2002). A court analyzing Strickland's first prong must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *Atkins v. Singletary*, 965 F.2d 952, 958 (11th Cir.1992) ("We also should

always presume strongly that counsel's performance was reasonable and adequate ....") (citation omitted).

To establish prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's inadequate representation, the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 697; *Meeks v. Moore*, 216 F.3d 951, 960 (11th Cir. 2000). Reasonable probability is defined as a "probability sufficient to undermine confidence in the outcome." *Id*. (quoting *Strickland*, 466 U.S. at 694). If a petitioner fails to prove that she has suffered prejudice, the court need not address the deficient performance prong of the Strickland test. *Holiday v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

### a.  Strongest Issues on Appeal

Petitioner attacks his counsel's effectiveness through a general argument that he failed to raise the strongest issues on appeal. Doc. 12, p. 6. Petitioner focuses on several issues discussed below, but claims that counsel could have raised more substantive issues on appeal. *Id*. He argues that counsel could have raised the issue of actual innocence or the court could have appointed new counsel to bring an ineffective assistance of counsel claim. Doc. 9. The state habeas court found that "counsel, after fully researching appellate issues and discussing various issues with Petitioner, raised what he believed were the most viable issues on direct appeal." Doc. 17-5, p. 7.

The Eleventh Circuit notes, "[T]he Sixth Amendment does not require appellate advocates to raise every non-frivolous issue." *Heath v. Jones*, 941 F.2d 1126, 1130-31 (11th Cir. 1991). It also finds that "effective advocates 'winnow out' weaker arguments even though the weaker arguments may be meritorious." *Id*. At the state habeas hearing, Petitioner trial/appellate counsel, Mr. Bearden, testified concerning his experience and his decisions at trial and on appeal.

At the time of Petitioner's trial, Mr. Bearden had conducted "at least one hundred" previous trials. Doc. 17-7, p. 33. In preparation for Petitioner's trial, he contacted every witness listed by the state, spoke to the codefendant's attorneys, and conducted an independent investigation. *Id.* at 34. In the course of his investigation, Mr. Bearden reviewed the discovery and discussed it with Petitioner. He eventually secured a plea offer which would have allowed Petitioner to plead to robbery by force, but Petitioner rejected it. *Id.* at 35. Following trial, Mr. Bearden's strategy on appeal was to raise the strongest claims, and he discussed this strategy with Petitioner. *Id.* at 36. This strategy had previously proved successful for Petitioner, as his first conviction was reversed on appeal.

Mr. Bearden's decisions at trial and on appeal, therefore, were based on strategy and tactics. Petitioner has failed to show that no competent attorney would have behaved the same way, and a strong presumption exists that Mr. Bearden's decisions fell within the range of reasonable professional conduct. Mr. Bearden was not required by clearly established federal law to bring every non-frivolous claim, and Petitioner has not shown that Mr. Bearden's decisions were the result of ineffectiveness rather than sound strategy. Therefore, the state habeas court's general conclusion that Mr. Bearden was not ineffective was not contrary to clearly established federal law. Petitioner is not entitled to relief. Nevertheless, out of an abundance of caution, each of Petitioner's specific claims are addressed below.

### b.   Failure to Contest Graddick's Testimony

Petitioner specifically alleges that counsel was ineffective for failing to raise the issue of Graddick's mental incompetency at trial and on appeal. As discussed above, however, counsel raised this claim in a pretrial motion in limine and on direct appeal. Petitioner does not claim that counsel should have brought the claim in a different manner or present argument concerning how

it could have been raised in a more effective manner. Petitioner also does not identify any evidence that counsel failed to introduce concerning Graddick's mental state. Because of this, the state habeas court found the claim to be without merit. This conclusion was not contrary to clearly established federal law, and Petitioner is not entitled to relief.

c.  Arrest Warrant

Petitioner asserts that his trial and appellate counsel were ineffective in failing "to investigate and challenge illegal arrest warrant without any showing of probable cause." Doc. 9, p. 14. According to Petitioner, Sergeant George Halliburton Jr., "falsified the contents of the Affidavit" used to support probable cause for Petitioner's arrest warrant and deceived the magistrate judge issuing the warrant.  It is not entirely clear from Petitioner's pleadings what information he contends was "falsified" or why he believes the information provided was insufficient, but he appears to assert that the information came from second-hand sources not at the scene of the crime.  Petitioner further argues that because the arrest warrant was "illegal" the court did not have jurisdiction over him, and his trial counsel failed to investigate the issue. Doc. 15, p. 2.

The state habeas court addressed this issue and determined that Petitioner failed to demonstrate either prong under *Strickland*. The state habeas court reasoned that counsel's performance was not deficient because counsel reviewed the arrest warrant and affidavit and made a reasonable determination that probable cause existed. Doc. 17-5, p. 10.  Petitioner also failed to show prejudice because Petitioner failed to make a showing or present credible evidence that the warrant would have been suppressed had counsel filed a pre-trial motion to suppress. The state court's determination was not contrary to clearly established federal law or based on an unreasonable determination of the facts.

16

In order for an arrest warrant to be valid, it must be issued by a "neutral and detached" judicial officer "supplied with sufficient information to support an independent judgment that probable cause exists for the warrant." *Whiteley v. Warden*, 401 U.S. 560 (1971). Affidavits supporting arrest warrants are "presumptively valid," and to be challenged, there must be a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant." *U.S. v. Sarras*, 575 F.3d 1191, 1218 (2009) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

In this case, a warrant was issued by a Peach County Magistrate Judge on May 21st, 2009, Doc. 17-7, p. 46, and was based upon sworn testimony given. While the affidavit contained in the warrant itself is conclusory and likely not enough to support an independent assessment of probable cause, "the constitution does not mandate that a sworn statement in support of an application for a [] warrant be reduced to writing." *U.S. v. Hilll* 500 F.2d 315, 321 (1974). The arrest warrant itself, stated:

> For sufficient cause made be known to me in the above affidavit, incorporated by reference herein and from other sworn testimony by the Prosecutor therein, with said affidavit and testimony establishing Probable Cause for the arrest of the accused. You are Hereby Commanded to arrest the Defendant named in the foregoing affidavit who is charged by the Prosecutor therein with the offense(s) against the Laws of this state as named in said Affidavit, and bring (him)(her) before me or some other Judicial Officer in this State to be dealt with as the law directs.

Doc. 17-7, p. 46. The Eleventh Circuit has found that nearly identical language, including the phrase, "other sworn testimony" is sufficient to establish probable cause to issue a warrant. *Wallace v. Smith*, 297 F. App'x 915, 916 (11th Cir. 2008). Like the Petitioner in *Wallace*, this Petitioner has failed to point to any evidence suggesting otherwise. Furthermore, in Mr. Bearden's opinion, Petitioner's pre-arrest statements to the police, statements of codefendants, and evidence from the victim and witnesses constituted "plenty of evidence to get a warrant."

Doc. 17-7, p. 27. Therefore, any challenge to the arrest warrant would have been meritless, and the state habeas court's conclusion that Mr. Bearden's decision to not file a motion to suppress or pursue the issue at trial or on appeal was within the scope of reasonable professional conduct was not contrary to clearly established federal law. Petitioner has failed to demonstrate that no objectively competent counsel would have failed to file a motion to suppress. See *Strickland*, 466 U.S. at 689; *Van Poyck*, 290 F.3d at 1322.

The state habaeas court's conclusion that Petitioner failed to establish prejudice under *Strickland* is not contrary to clearly established federal law for the same reasons. Petitioner did not show that evidence would have been suppressed had counsel filed the motion, and does not identify any evidence which would be subject to suppression. Without so doing, Petitioner has failed to demonstrate that a reasonable probability exists that had a motion been filed, the result of the proceeding would have been different. See *Strickland*, 466 U.S. at 694. He is not entitled to relief on this ground.

### d.   Improper Comments by Trial Judge

Petitioner argues that counsel was ineffective for failing to raise the issue that the trial judge made personal, improper comments to the jurors. Doc. 1, p. 7. Following the publication of the verdict and with no objections from the parties, the court commented as to the seriousness of Petitioner's crime and the quality of his witnesses. The court stated:

> Gabriel Jackson, in my time down here, is the second worst witness I've ever heard in my opinion. It was clear to me that he was lying. It was clear to me that he was put up to this. I found it shocking, number one that we admit that y'all made the story up, number one, but number two, his concern wasn't that y'all were doing a robbery, he was concerned he wouldn't get his guns back. I just find that shocking to me. I also find it very difficult to believe that he knew about those for three years and suddenly decided to come forward. It's just terrible. It's terrible. I agree with the State that I think you're the mastermind behind that. I think you're the mastermind behind this whole system. It's the same thing I told

you last time that we were here together. My opinion has not changed. I find it strange that this trial, the talk about Graddick's mental capability, but at the same time you tell everybody how you admire him because he hustles and how he put his gentle hand on your shoulder. It's unbelievable is what it is and I don't believe it.

Doc. 17-12, p. 10. Petitioner appears to argue that these comments were prejudicial and adversely affected how the jurors viewed Petitioner. The state habeas court addressed this claim on the merits and determined that counsel's performance was reasonable and Petitioner was not prejudiced by counsel's failure to object.

Defense Counsel testified during Petitioner's state habeas hearing that he remembered the judge making these comments, but he did not object because the comments were made after the verdict was published. Doc. 17-7, p. 37. "Even improper comments by a judge warrant reversal only if they had such a prejudicial effect on the jury that they denied the defendant a fair trial." *U.S. v. Hill*, 643 F.3d 807, 849 (11th Cir. 2011) (citing *United States v. Tampas*, 493 F.3d 1291, 1303 (11th Cir. 2007)). In this case, the comments were made after the verdict was published and the guilt-innocence stage of the trial had concluded. At that point, the jury no longer had any role to play, and Petitioner cannot show that the trial judge's comments created a "reasonable probability of the outcome was changed because of them." *Cargill v. Turpin*, 120 F.3d 1366, 1379 (11th Cir. 1997). The habeas court's conclusion that counsel's performance was not deficient was itself not contrary to clearly established law.

Even if counsel's performance was deficient, Petitioner cannot show prejudice. The state habeas court correctly observed that any challenge to these comments would have proven fruitless because these comments were made after the jury had returned its verdict and the judge did not enhance Petitioner's previous sentence. Doc. 17-5, p. 11. The court correctly determined that any challenge to the trial judge's remarks would not have changed the outcome of the

proceedings.  See *Strickland*, 466 U.S. at 697; *Meeks*, 216 F.3d at 960.  Since Petitioner does not show prejudice, the state court's decision did not contradict clearly established federal law.  See *Strickland*, 466 U.S. at 689; *Wellons*, 695 F.3d at 1206.

## e.  Failure to Investigate

Petitioner attacks counsel's effectiveness with claims that counsel failed to investigate and subpoena co-defendant Bedford and Investigator Halliburton.  Doc. 1, p. 8.  Petitioner specifically alleges that Bedford wrote a note to Graddick, and this note implicated Graddick's involvement in planning the robbery and providing the gun.  *Id*.  Petitioner argues that this note would have corroborated Petitioner's testimony about the robbery.  *Id*.  The state habeas court denied this issue on the merits, concluding that trial counsel investigated Shane Bedford and thought his testimony would be detrimental to Petitioner's defense Doc. 17-5, p. 11-12.  The state habeas court's determination that trial counsel's tactical strategies are entitled to deference was not contrary to clearly established federal law or based on an unreasonable determination of the facts.

At Petitioner's state habeas hearing, Mr. Bearden testified that he investigated Bedford. In Mr. Bearden's opinion, based on prior statements of Bedford's, Bedford's testimony would not have been favorable. Bedford had previously provided statements that Petitioner was involved in the robbery. Mr. Bearden further testified that Petitioner never indicated that he wanted to call Bedford as a witness, and had Petitioner so indicated, Mr. Bearden would have advised against it. Even if Bedford did testify favorably at the trial, he would have been subject to impeachment through his prior statements implicating Petitioner. Doc. 17-7, p. 34-35. Based on this, it was sound trial strategy for Mr. Bearden not to call Bedford as witness and the state

habeas Court's conclusion that counsel did not perform deficiently was not contrary to clearly established federal law.

Petitioner has also failed to produce any competent evidence that Bedford would have testified on his behalf.  At the state habeas hearing, Petitioner attempted to introduce a note purportedly written by Bedford, which implicated Graddick in the armed robbery. It is not clear who wrote this note, when, or to whom. It was not authenticated and the habeas court did not admit it into evidence. The note is scrawled in barely legible handwriting and is unsigned. It contains extensive spelling and grammatical mistakes and is internally inconsistent. Doc. 17-7, p. 47. It concludes with the statement "I Inv. Halliburton wrote this note just as Michael Shane Bedford wrote it on the paper," and suggests that Halliburton copied the note from another note found by an unidentified third party "in C-Block with Inmate W/M – Shane Bedford." *Id*. The note was properly excluded from evidence by the State habeas court.

Even if the note had been admitted, however, it does not tend to support Petitioner's claims. Petitioner claims that the note demonstrates Graddick planned the robbery and provided the gun, which would have corroborated Petitioner's testimony, according to Petitioner. Doc. 17-7, p. 12 – 13. The note appears, however, to be an attempt to convince Graddick not to cooperate or testify against Petitioner and Bedford. It states:

> Chris why the fuck is you snitchin on me. You don't fuckin remember this is your idia. Why you writin statements. Shut your mouth or its us 2 vere U. I did not turn on U why are U trying to turn on me. You don't roamber what we talked about if you don't say nothing we will all go free. Shut up they don't have shit unless U told. (On the other side of the paper it reads.
>
> Don't forget it was your gun.

Doc. 17-7, p. 47. Thus, the letter likely implicates Petitioner in the robbery and nowhere indicates that Petitioner was not involved. Petitioner has also failed to demonstrate that defense

counsel knew about the note or that the note existed at the time of his trial. Finally, the note does not tend to show that Bedford would have testified favorably for Petitioner had he been called by a witness. In fact, Bedford had previously implicated Petitioner. Because the note does not support his defense, and because Petitioner did not establish that defense counsel knew about the note prior to trial, he has failed to demonstrate that counsel's performance was unreasonable in failing to introduce the note. Therefore, it cannot be said that the state court's denial of this claim was contrary to clearly established federal law. Petitioner is not entitled to relief on this claim.

### C. Request for Judicial Notice

On January 4, 2016, Petitioner filed a Motion/Request for Judicial Notice asking this court take judicial notice of certain facts. Doc. 14. Included in the "facts" are various parts of the state court record which are properly considered by this Court in Petitioner's action. However, Petitioner appears to ask this Court to take notice that certain trial testimony and evidence is true, as he singles out testimony and evidence favorable to his theory of defense in his motion. This Court cannot do so as it must view the evidence in the light most favorable to the verdict and defer to the state court on issues of state law. Therefore, Petitioner's Request for Judicial Notice should be Denied. Doc. 14.

<u>CONCLUSION</u>

Petitioner's claims related the prosecutor withholding evidence, Mr. Bearden undermining Mr. Jackson's credibility, and trial counsel's failure to raise a claim of actual innocence were not raised at the state court level and are procedurally barred from review. It is **RECOMMENDED** that these claims be dismissed. Plaintiff's ineffective assistance of counsel claims related to (1) counsel raising the strongest issues of appeal, (2) counsel's failure to file a motion to suppress, (3) counsel's failure to attack Mr. Graddick's testimony on appeal, (4)

counsel's failure to investigate, and (5) counsel's failure to challenge improper remarks by the court were considered on the merits by state courts. The courts' decision as to each claim was not contrary to clearly established federal law. It is **RECOMMENDED** that these claims **DENIED**. Plaintiff substantive claim concerning the sufficiency of the evidence was also considered by the state courts and found to be without merit. This conclusion was also not contrary to clearly established federal law and it is **RECOMMENDED** that the claim be **DENIED**. It is further **RECOMMENDED** that Petitioner Request for Judicial Notice be **DENIED**. Doc. 14. Additionally, pursuant to the requirements of Rule 11 of the rules governing Section 2254 cases, it does not appear that Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Therefore, it is **FURTHER RECOMMENDED** that the Court deny a certificate of appealability in its final order.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, <u>WITHIN FOURTEEN (14) DAYS</u> after being served with a copy thereof. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on

appeal for failing to object. In the absence of a proper objection, however, the court may review

on appeal for plain error if necessary in the interests of justice."

     **SO RECOMMENDED**, this 29th day of July, 2016.


                    s/ Charles H. Weigle       
                    Charles H. Weigle
                    United States Magistrate Judge